Joshua **HEAVY RUNNER**, et al., **Plaintiffs,**

v.

Robert **BREMNER**, et al., **Defendants.**

No. CV–79–23–GF.

United States District Court, D. Montana, Great Falls Division.

Aug. 10, 1981.

Sharon Morrison, Missoula, Mont., for plaintiffs.

Richard Gillespie, Cannon & Gillespie, Helena, Mont., for defendants, Bremner, Plumage, Pemberton, Magee and Glalup.

Edward Alexander, Alexander & Baucus, Great Falls, Mont., for defendants Rutherford.

## MEMORANDUM

HATFIELD, District Judge.

In this action plaintiffs seek to compel the Browning and Heart Butte School Districts to provide all Blackfeet Indian students who are English language deficient with bilingual-bicultural education. Plaintiffs contend that their rights to an equal education are being violated in contravention of 20 U.S.C. § 1703(f), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and the Fourteenth Amendment.

Before the court are cross motions for summary judgment. Both sides request, pursuant to Rule 56, Fed.R.Civ.P., that the court enter judgment in their favor. The matter came on for hearing July 6, 1981, and with the respective briefs filed, it is ripe for disposition. This court has jurisdiction pursuant to 20 U.S.C. §§ 1706 and 1708, and 28 U.S.C. § 1343.

Prior to ruling on these motions the court notes that defendant, Board of Trustees of School District No. 9's motion to dismiss for failure to state a claim remains outstanding. As the allegations and essence of the complaint will show, the amended complaint will survive the motion to dismiss.[1] Accordingly, it will be denied. And because there are genuine issues of material fact left to be resolved neither party is entitled, at this time, to judgment as a matter of law.

Plaintiffs are Blackfeet Indian students or pre-school age Indians ("Students") living in Browning and Heart Butte, Montana, or within the exterior boundaries of the Blackfeet Indian Reservation. The Students allege they have limited proficiency in the English language, because the native Blackfeet language is primarily or partially spoken in their homes by various family members. Defendants are trustees of the Browning and Heart Butte elementary and secondary school districts ("Trustees").

The Students seek declaratory and injunctive relief, contending inter alia, that

---

1. The Students allege they are language deficient and that defendants have provided no remedial programs to deal with the handicap. The failure of defendants to act may deny them a meaningful education under the Equal Educational Opportunity Act of 1974, 20 U.S.C. § 1703(f), see, Deerfield Hutterian Association v. Ipswich Board of Education, 468 F.Supp. 1219 (D.S.D.1979). Therefore, considering all the material allegations in the complaint as true, coupled with the liberal construance afforded the plaintiffs, this court cannot say that it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim for relief. The motion must therefore be denied. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

the Trustees deny these Students "their right to equality in public education and to be free from discrimination in the operation of the public schools" in violation of federal law. The Students seek the institution of bilingual-bicultural educational programs as an affirmative method of insuring compliance with federal law and correcting past discriminatory practices.

The Students essentially claim that the Trustees, as governing members of the local school districts, fail to ensure that students with English language deficits are given instruction which addresses their linguistic needs. For this reason, plaintiffs contend, the Trustees are at odds with their obligations under the Equal Educational Opportunity Act of 1974, 20 U.S.C. § 1703(f), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Fourteenth Amendment and various contracts made for the benefit of the Students between the Trustees and the federal government.[2]

The Trustees respond asserting there is no constitutional right to bilingual-bicultural education in the public schools; and second, that there is no language barrier which effectively precludes students from meaningful education in these two school districts. Therefore, the Trustees claim they are not in violation of any federal law and are entitled to summary judgment.

■ The Trustees are correct as to their first contention. *Guadalupe Organization, Inc. v. Tempe Elementary School District No. 3*, 587 F.2d 1022 (9th Cir. 1978) disposes of the issue of whether bilingual-bicultural education is constitutionally required. There the Ninth Circuit Court of Appeals held "that the Constitution neither requires nor prohibits the bilingual and bicultural education sought by [plaintiffs]. Such matters are for the people to decide." 587 F.2d at 1027.

Thus, while the court expresses no opinion as to the merits of bilingual-bicultural

education as a way of remedying language deficiencies in Blackfeet students, the decision as to its implementation lies solely with the Trustees as elected officials. Since there is no right to bilingual education *per se*, the court next addresses the question of the State's statutory obligations in relation to language deficient students.

Clearly federal law requires the State to ensure that an Indian student's language deficiencies are addressed. The Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1703(f), provides in part:

No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—

\* \* \* \* \* \*

(f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs.

Much to the same obligation is Title VI of the Civil Rights Act of 1974. 42 U.S.C. § 2000d of the Act provides in part:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The complaint alleges that certain Blackfeet Indian students attending schools in both Browning and Heart Butte lack sufficient proficiency in the English language so as to impede equal participation in the educational programs offered.

■ The language of these Acts mandates remedial assistance to students with English language deficits, regardless of the number, "[a]s long as there is at least one person arguably denied equal educational opportunity." *See, United States v. School*

---

2. Since the court finds that the State is obligated pursuant to specific statutes, it need not reach either the Fourteenth Amendment issue or the third party contract enforcement issue. *See, Idaho Migrant Council v. Board of Ed.*, 647

F.2d 69 (9th Cir. 1981); *Lau v. Nickols*, 414 U.S. 563, 566, 94 S.Ct. 786, 788, 39 L.Ed.2d 1 (1974); *see also, Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972).

*District of Ferndale*, 577. F.2d 1339, 1345 (6th Cir. 1978); *see also, Deerfield, supra.*

■ While there is a dispute as to the existence of any language deficient students, judicial notice will be taken of various federal grant applications submitted by these two school districts which tend to show that there are students who labor under a language barrier.[3] See Plaintiffs' Exhibits Nos. 7, 11 and 22. That being the case, summary judgment for defendants is foreclosed absent a showing of an instructional program which will "overcome language barriers that impede equal participation."

While summary judgment cannot be entered for the Trustees, neither can it be entered for the Students. As has been shown, as a matter of law, the Trustees are not required to implement bilingual-bicultural education. *Guadalupe, supra.* The Trustees are however saddled with the obligations of both 42 U.S.C. § 2000d and 20 U.S.C. § 1703(f). To make out a claim under these Acts the Students must show

(1) The denial of an educational opportunity on account of race, color, sex or national origin; and

(2) The educational agency's failure to take action to overcome language barriers that are sufficiently severe to impede a student's equal participation in the instructional programs.

*Deerfield Hutterian Association v. Ipswich Board of Education*, 468 F.Supp. 1219, 1231 (D.S.D.1979); citing *Martin Luther King Jr. Elementary School Children v. Michigan Board of Education*, 451 F.Supp. 1324 (E.D. Mich.1978); *see also, Morales v. Shannon*, 516 F.2d 411 (5th Cir. 1975).

In this case, there lacks sufficient evidence to show that the Trustees have denied these Students educational opportunity on account of race, color, sex or national origin. The court feels the Students should be given the opportunity to establish more conclusively at trial the basis of their claim. Furthermore, the Trustees will be allowed

to proceed at trial to show that the school districts are currently in compliance with the Equal Educational Opportunities Act of 1974 and Title VI. The Trustees are "required under federal law to ensure that needs of students with limited English language proficiency are addressed." *Idaho Migrant Council v. Board of Ed.*, 647 F.2d 69 (9th Cir. 1981).

Therefore, for the reasons contained herein it would be improper for the court to grant summary judgment for either side without first receiving further evidence regarding (1) the number of students having limited proficiency in English and degree of such impediment; (2) current instructional programs, if any, which address the needs of those students; and (3) any future programs which have as their goal the remediation of linguistically handicapped students.

In consideration of the type of information needed here, the case is stayed for sixty (60) days during which time the parties are to compile the information listed above, and any other relevant documentation. The court is particularly interested in the parties' formulation of an educational program for remediation of students who may be identified as not being proficient in the English language.

The court suggests as an alternative to court determination that the parties submit for court approval those educational programs envisioned by both sides which will ensure that the needs of a linguistically handicapped student are met.

---

3. In one such grant application, dated 2/9/81, officials of the Heart Butte School District state: "... 77% of children tested were found to have limited English speaking ability."